# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-674

**STATE OF LOUISIANA**

**VERSUS**

**E. J. F.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. CR1166-05
HONORABLE HERMAN I. STEWART  JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**MARC T. AMY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Marc T. Amy and James T. Genovese, Judges.

**AFFIRMED.**

**David W. Burton**
**District Attorney**
**Richard A. Morton**
**Assistant District Attorney**
**Post Office Box 99**
**DeRidder, LA   70634**
**(337) 463-5578**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**W. Jarred Franklin**
**Louisiana Appellate Project**
**3001 Old Minden Road**
**Bossier City, LA   71112**
**(318) 746-7467**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **E. J. F.**

AMY, Judge.

A jury found the defendant guilty of three counts of aggravated incest, in violation of La.R.S. 14:78.1. He was sentenced to serve fifteen years on each count, to run concurrently with each other but consecutively to a federal sentence that he is currently serving pursuant to a conviction for possession of child pornography. The defendant appeals, alleging insufficiency of evidence, error by the trial court in allowing other crimes evidence to be admitted at trial, error by the trial court in denying his motion to suppress, and an excessive sentence claim. For the following reasons, we affirm.

**Factual and Procedural Background**

The State alleged that the defendant, E.J.F.,[1] committed three counts of aggravated incest, in violation of La.R.S. 14:78.1, when the defendant allegedly engaged in acts of sexual battery against A.N.H., insomuch as the victim was under the age of eighteen and was related to the defendant as his biological granddaughter. Specifically, the defendant was born on April 26, 1955, while the victim was born on April 14, 1997. The State alleged that the first incident of fondling occurred on or about May 1, 2005, and the second violation occurred on or about December 10, 2005. Finally, the third charge related to an alleged act perpetrated on December 19, 2005. The record establishes that A.N.H.'s mother is the biological daughter of the defendant.

According to testimony at trial, the defendant's daughter, A.B., took her three children to visit their grandfather, the defendant, in a FEMA trailer in which he was residing. According to the victim, she, along with her brother and sister, watched a

---

[1] Pursuant to La.R.S. 46:1844(W), initials are used to protect the identity of crime victims who are minors or victims of sex offenses.

movie and, with their mother's consent, spent the night with their grandfather. Her testimony reveals that her brother, C.F., and her sister, B.F., slept in bunk beds, while she retired to the couch in the living room to sleep for the night. The State alleges that the defendant sat on the couch with her, where he rubbed her breasts and touched her vagina. According to both the victim and her brother, the defendant then got up and chastised C.F. for making noise and opening the curtain that separated the rooms. Upon returning, the defendant allegedly exposed himself and asked the victim to touch his penis. She refused. According to A.N.H.'s mother's testimony regarding what her daughter told her about that night, A.N.H. subsequently put her head underneath the covers. When it became apparent that the victim would not comply with the defendant's request, he went to his bedroom, where he remained for the rest of the night.

According to the victim's mother, A.B., her son, C.F., told her the next day that he had gotten into trouble the previous night for peeking around the curtain. As testified to at trial, this prompted A.B. to ask the victim if something had happened. A.B. stated at trial that A.N.H. began to shake when she told her mother the sequence of events that transpired at the defendant's house. After A.B. was made aware of the allegations, she called the sheriff's office to report the alleged misconduct.

According to Detective Bebee's testimony, the victim gave a video statement at the sheriff's office the following day. In this recorded statement, the victim indicated that the most recent incident did not represent the first time the defendant inappropriately touched her. She recounted one incident wherein the defendant was spending the night at her house. She sat on his lap underneath a blanket, while her parents were in another room. The defendant allegedly put his hands down her pants,

touching her vagina. In this video statement, the victim also recalls a separate incident in which the defendant was holding the victim on his lap while sitting on the couch with A.B. and the victim's sister. The children were looking at magazines and reviewing their Christmas lists. The victim and the defendant were covered by a blanket, and the defendant allegedly fondled the victim's vagina underneath her clothes. As set forth in the video, the victim recalled that the defendant inappropriately touched her and put her hand on his penis on several other occasions, but she could not remember the details surrounding those times. We note that the victim testified to the veracity of the video-taped statement at trial.

Ultimately, the State charged the defendant with three counts of aggravated incest. After a jury found him guilty as charged, he was sentenced to serve fifteen years at hard labor on each count. The sentences were ordered to run concurrently with each other but consecutive to the federal sentence imposed for possession of child pornography, with full credit for time served. The defendant filed a motion to reconsider sentence, which was denied. The defendant appeals.

He asserts the following assignments of error:

1) There is insufficient evidence to prove the guilt of Defendant beyond a reasonable doubt for the offenses of Aggravated Incest.

2) The Trial Court erred by allowing other crimes evidence to be admitted at trial.

3) The Trial Court erred in denying the Defendant's Motion to Suppress.

4) The sentences imposed are excessive for this offender and these offenses.

**Discussion**

*Sufficiency of the Evidence*

"When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence." *State v. Hearold*, 603 So.2d 731, 734 (La.1992). The defendant argues that "[t]he only evidence produced at trial was with respect to a December 19, 2005 occurrence." He contends that the State put forth no evidence regarding the particular location and dates of the alleged acts. Concerning the incident on December 19, the defendant urges that the State did not produce objective evidence to prove that he committed a sexual battery, such as a medical examination of the victim, results of said exam, or expert testimony.

The analysis of an insufficient evidence claim is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. See *King*, 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

> In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. In order for this court to affirm a conviction, the record must reflect that the State has satisfied this burden of proving the elements of the crime beyond a reasonable doubt. *State v. Kennerson*, 96-1518 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367.

*State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27.

4

At the time the alleged offenses occurred, the law provided in pertinent part:

A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.

B. The following are prohibited acts under this Section:

(1) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, molestation of a juvenile crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.

(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.

La.R.S. 14:78.1.

There is sufficient evidence in the record to prove the elements of aggravated incest on all three counts. The defendant did not contest the fact that the victim is under the age of eighteen, nor did he dispute that she is his biological granddaughter. As stated in the factual and procedural section of this opinion, the victim's video-taped statement taken only two days after the last alleged offense occurred, corroborated by the testimony of her mother and siblings, revealed that the defendant touched A.N.H.'s breasts and/or vagina on at least three separate occasions with the intent to arouse or satisfy his sexual desires.

The defendant's contention that the State only produced evidence pertaining to the last incident is without merit. In the video-taped statement, the victim specifically referenced two other similar occurrences and reported other undetailed occasions, but occasions nonetheless.

5

The defendant also argues that the State did not meet its burden of proof because it failed to put forth objective evidence of a sexual battery. This contention is without merit. The court in *State v. Rideaux*, 05-446, p. 2 (La.App. 3 Cir. 11/2/05), 916 So.2d 488, 491, quoted the language of *State v. Roca*, 03-1076, pp. 11-12 (La.App. 5 Cir. 1/13/04), 866 So.2d 867, 874, *writ denied*, 04-583 (La. 7/2/04), 877 So.2d 143:

> In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. *State v. Stec*, 99-633, p.4 (La.App. 5 Cir. 11/30/99), 749 So.2d 784, 787. In the case of sexual offenses, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense.

Accordingly, the testimony of A.N.H., even without any physical evidence, is sufficient to prove that aggravated incest occurred.

Further, the defendant's argument that the State failed to produce any evidence proving that the offenses occurred on May 10, 2005 and December 10, 2005 is also without merit. This court in *State v. Foshee*, 99-1423, p. 6 (La.App. 3 Cir. 4/5/00), 756 So.2d 693, 696, stated, "[t]he date of [the] offense is not a specific element of aggravated incest[.]" Additionally, the dates correspond with the victim's recollection in her video-taped statement of one incident occurring at the end of second grade and another in third grade before Christmas.

We find that the evidence in the record is sufficient to sustain the conviction. Accordingly, this assignment of error is without merit.

*Evidence of Other Crimes*

The defendant argues that the trial court erred by allowing evidence of other crimes to be admitted at trial. In particular, he asserts that the photographs related to

the defendant's federal conviction for possession of child pornography should have been declared inadmissible by the trial court. He contends that La.Code Evid. arts. 404(A)(1) and 404(B) make evidence inadmissible for the purpose of proving his character or his disposition toward committing illegal acts. Louisiana Code of Evidence Article 404 provides in pertinent part:

> **A. Character evidence generally.** Evidence of a person's character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
>
> **(1) Character of accused.** Evidence of a pertinent trait of his character, such as a moral quality, offered by an accused, or by the prosecution to rebut the character evidence; provided that such evidence shall be restricted to showing those moral qualities pertinent to the crime with which he is charged, and that character evidence cannot destroy conclusive evidence of guilt.

Louisiana Code of Evidence Article 404 reads in pertinent part:

> **B. Other crimes, wrongs, or acts.** (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. . . .

The defendant also argues that the evidence, if admitted under La.Code Evid. art. 404(B), is subject to the balancing test of La.Code Evid. art. 403, which states: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time."

In pretrial motions, the State argued that photographs of child pornography found on the defendant's computer pursuant to a search of the defendant's home, were offered to prove lustful disposition toward children under La.Code Evid. art 412.2. Louisiana Code of Evidence Article 412.2 provides:

7

A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

The State, urging that under La.Code Evid. art. 403 the probative value of the evidence outweighed any prejudice to the defendant, maintained that the evidence was admissible.

The defendant insisted that the application of La.Code Evid. art. 412.2 is discretionary and that using it to admit the depictions of child pornography in this case violated his due process rights, particularly because child pornography is not an integral part of aggravated incest. Alternatively, the State contended that La.Code Evid. art. 412.2 expands the admissibility of evidence under La.Code Evid. art. 404(B) when the offense is sexual in nature and is perpetuated against a victim under the age of seventeen. The trial court agreed with the State, finding the evidence admissible, insomuch as it proved a lustful disposition toward children.

In a recent case involving the forcible rape trial of a fourteen-year-old girl, the State offered evidence of another crime, sexual battery, also committed on a fourteen-year-old girl, who testified that she had been sexually assaulted by the defendant. *State v. Mayeux*, 06-944 (La.App. 3 Cir. 1/10/07 ), 949 So.2d 520. An eyewitness to the offense also testified at trial regarding the sexual assault. The defendant argued that admission of the testimony was prohibited by La.Code Evid. art. 404(B)(1), that the crimes' sexual natures were dissimilar and that the introduction of the evidence of the sexual battery would be unduly prejudicial. The trial court ruled that the evidence was admissible pursuant to La.Code Evid. Art 412.2, because the testimony

8

of the sexual battery showed a lustful disposition toward young teenage girls and that the probative value of the evidence outweighed the prejudicial effect of the defendant's case. The trial court's ruling was affirmed on appeal. This court stated, "[w]hile one incident involved rape and one incident involved oral sexual contact, in both cases, Defendant sought out fourteen-year-old girls, who were guests in his home, late at night after they fell asleep." *Id.* at 529.

Based on the language of La.Code Evid. art. 412.2 and the jurisprudence applying the article, we find that the trial court did not commit error when it allowed evidence of the defendant's federal conviction for possession of child pornography to be admitted. Because the defendant was charged with sexual misconduct against a victim who was under the age of seventeen, the defendant's conviction relating to the possession of pornographic images of children[2] is relevant for the purposes of revealing his lustful disposition toward young girls.

We note, too, that the defendant has not produced evidence of how the probative value of the defendant's federal conviction is outweighed by any prejudicial effect of the evidence. Accordingly, the assignment is without merit.

---

[2] We note that the trial court did not allow pictures depicting adult pornography into evidence; rather, the trial court only deemed admissible the images of adult men engaging in sexual conduct with young girls and cartoons depicting well-known cartoon fathers engaging in sexual activities with their young daughters.

*Motion to Suppress*

Relying on La.Code Crim.P. arts. 162[3] and 163,[4] the defendant argues that the trial court erred when it denied the defendant's motions to suppress the search warrant. The search warrant issued in this case was originally dated July 21, 2005 and was corrected by the issuing judge, after the search, to read December 21, 2005. The judge who issued the warrant and made the subsequent correction was the same judge who presided at the defendant's jury trial. This judge took judicial notice of his handwriting on the search warrant where the corrections were made. In his first contention, the defendant claims the motion should have been granted on the grounds of the warrant being stale, as December 21 is obviously more than ten days past July 21. Due to its alleged expiration, the defendant sought to suppress all evidence seized pursuant to the search.

In his second motion, he argued that the warrant did not describe the location to be searched with particularity, insomuch as the warrant described the place as a "gray wood frame house and travel trailer" when, in actuality, a beige-colored mobile home and a FEMA trailer were searched. When asked about the description, Detective Bebee stated that it was "the 911 description of the address at that residence[.]" She also testified that when she arrived at the defendant's address, the

---

[3] Louisiana Code of Criminal Procedure Article 162 provides:

A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.

A search warrant shall particularly describe the person or place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search or seizure.

[4] Louisiana Code of Criminal Procedure Article 163(C) provides in pertinent part, "[A] search warrant cannot be lawfully executed after the expiration of the tenth day after its issuance."

defendant was not home so she walked to the adjacent residence. She then discovered that the neighboring house belonged to the defendant's father and stepmother, who confirmed that the defendant lived at the address indicated on the warrant. According to Detective Bebee's testimony, the defendant's stepmother told her she could find the defendant at work; therefore, Detective Bebee went to the defendant's place of employment. The defendant, then, accompanied her to his home, where he confirmed that the structures on the property were his own. Thereafter, the search was conducted.

In ruling on the motions, the court gave oral reasons:

Thank you. First of all, the Court has viewed the photograph of the mobile home. It appears to be an off-white color. Whether it could be considered gray or not, I don't know. I just call it an off-white as the way it appears in the photograph.

As to the search warrant and its date, the application was signed before myself as criminal district judge, dated December 21, 2005, by Ms. Janet Bebee. The application is for a search warrant of the permanent residence and the travel trailer located at 548 Longville Acres. The testimony has been that the mobile home that's shown in the photograph and the travel trailer were the only structures that were at 548 Longville Acres and that 548 Longville Acres had its own driveway leading up to that residence and that the property of Mr. [ F's] parents was in the neighborhood of 100 yards away and had its own separate driveway and its own separate number, although they do not recall what that number was. With the investigation not having begun until December 21, it appears that the printed date on the search warrant showing the 21st day of July, the month was printed in error; and apparently the Court in signing the warrant saw the 21st but not the July date and signed the warrant with an erroneous date on it at that time. I feel 100 percent positive that with the affidavit having been signed in my own presence on the 21st day of December, that the search warrant was also signed on that date of the application. And there is no evidence being presented to the Court that shows that the application was signed on any date other than December 21, 2005.

There is testimony that establishes that 548 Longville Acres was the residence of the defendant, as acknowledged by him. When considering the application together with the search warrant, the Court considers that the application was made for two structures on the property. The search warrant was granted for two structures on the property. All of the testimony has been there were only two structures

11

on the property. And an error in describing one of those two structures from wood-frame home to mobile home is not sufficient in this Court's mind to set aside what is otherwise a good and valid search warrant for the two structures.

There is certainly nothing to show any bad faith in this instance. The obtaining of the search warrant was with proper application and probable cause stated in the application. It was on December 21, 2005. The only error in the application was, again, the description of the structure as gray, wood-frame house. But, clearly, the application was for two structures that were in the nature of living quarters on the property. And there were only two structures that were in the nature of living quarters, by any description, on the property; therefore, the Court is going to rule that the motion to suppress will be denied.

We find that the testimony at trial clearly indicates that the application for the search warrant was presented to the judge on December 21, 2005. As noted by the trial court, we emphasize the fact that the investigation did not begin until December 19, 2005, when the offenses were reported. To suggest that the warrant was stale simply ignores the possibility of typographical error, particularly when the judge took judicial notice of his signature next to the correction and the defendant presented no evidence to establish that the warrant was actually prepared on July 21, 2005.

Insomuch as the defendant contends that the search warrant was invalid due to the wrong description of the structures to be searched, we rely on the standard of review set forth by the court in *State v. Korman*, 379 So.2d 1061, 1063 (La.1980) (citations omitted):

The description contained in the search warrant is adequate if it is sufficiently detailed so as to allow the officers to locate the property with reasonable certainty and with reasonable probability that they will not search the wrong premises.

This court has held that a minor error in a portion of the description of the premises to be searched does not invalidate the search.

Additionally, the court in *State v. McLeod*, 03-50 (La.App. 3 Cir. 4/30/03), 843 So.2d 1268, 1274 stated, "[i]f police officers knowingly search entirely different premises

12

than that described in the warrant, the evidence seized will be suppressed because the warrant did not particularly describe the place to be searched. *State v. Manzella*, 392 So.2d 403 (La.1980)."

In this case, before conducting the search, the detective confirmed that the defendant indeed lived in the two structures located at the address contained in the warrant. The record does not reveal evidence that the wrong location was searched or that the search warrant was executed in bad faith. Accordingly, this assignment lacks merit.

*Excessive Sentence*

In his final assignment of error, the defendant argues that his fifteen-year sentences are excessive. On appeal, he asserts, "the Trial Court placed heavy emphasis on the victim impact statement and potential damage to A.N.H., although the State failed to submit any evidence to support these conclusions." He also contends that the "Trial Court also penalized the Defendant for continuing to deny his guilt. This is not an aggravating fact justifying a sentence in the upper ranges." Finally, he urges that "[t]he Trial Court failed to adequately consider the factors listed in [La.Code Crim.P. art.] 894.1."

Pursuant to La.Code Crim.P. art 881.1(E),[5] the defendant is precluded from raising these specific grounds on appeal. Therefore, we will conduct a bare claim of excessiveness. *See State v. Mims*, 619 So.2d 1059 (La.1993).

---

[5] Louisiana Code of Criminal Procedure Article 881.1(E) reads in pertinent part:

Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331, this court stated:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

At the time the offenses were committed, La.R.S. 14:78.1(D) imposed the following sentence for persons convicted of aggravated incest: "A person convicted of aggravated incest shall be fined an amount not to exceed fifty thousand dollars, or imprisoned, with or without hard labor, for a term not less than five years nor more than twenty years, or both." As the trial court sentenced the defendant to fifteen-year sentences, a maximum sentence was not imposed. Neither did the trial court order him to pay a fine.

The trial court stated in its written reasons for sentencing:

> At the sentencing hearing, your daughter, the mother of A.N.H., read a victim's impact statement which has been filed in the record. The Court allowed you to submit a written statement. In that statement you continue to deny any guilt whatsoever and accuse your daughter of lying and being motivated by revenge. You also complain of the jury being stacked and tainted with some jury members napping during the trial. You also accuse the Beauregard Parish Judicial System of being corrupt. You take no responsibility whatsoever for your present situation. I

14

reject outright your groundless allegations against the jury and this Court.

You are now serving ten (10) year federal sentence for possession of child pornography. Despite your protestations this Court is convinced of your guilt and I fully concur with the jury's findings.

R.S. 14:78.1 provides that a person convicted of aggravated incest shall be subject to imprisonment with or without hard labor for a period of not less than five (5) nor more than twenty (20) years.

Your only criminal history involves your federal conviction of child pornography. That conviction arose out of the investigation of the instant case. You are therefore classified at this time as a first felony offender.

Mr. [F.], your crime is particularly heinous considering that the victim, your granddaughter, was only eight (8) years old at the time of this occurrence and your molestation and sexual battery of this defenseless child occurred over a period of several months. The psychological effect on her will probably never be fully known or appreciated, but the Court believes that it will be substantial and long lasting.

In arriving at a sentence for you I have considered all of the provisions of the sentencing guidelines set forth in Code of Criminal Procedure Article 894.1. Although you are a first offender, I do not believe you are a good candidate for probation. I believe that there is a high probability that if you were granted probation you would constitute a danger to children and likely re-offend. Further, any probation, if granted, would be subject to you serving your federal sentence.

The public and our legislature expect the Courts to impose substantial and meaningful sentences in cases such as yours which involve sexual abuse of the very young and defenseless. If this case had occurred at a time that the present law was in effect, you would be facing a minimum sentence of twenty-five (25) years imprisonment on each count.[6] The Court however must impose a sentence in compliance with the law in effect at the time you committed these crimes.

After reviewing the record, we find that the defendant's sentences are not excessive. The trial court did not abuse its discretion in sentencing the defendant to serve fifteen years in prison on each count.

**DECREE**

---

[6] Louisiana Revised Statutes 14:78.1 was amended in 2006 to provide:

> Whoever commits the crime of aggravated incest on a victim under the age of thirteen years when the offender is seventeen years of age or older shall be punished by imprisonment at hard labor for not less than twenty-five years nor more than life imprisonment. At least twenty-five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.

For the foregoing reasons, the defendant's convictions and sentences for aggravated incest are affirmed.

**AFFIRMED.**